# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| ROSS & LOGAN INDUSTRIES, INC.,<br>EIN 59-3661336, | ) | Case No.: 3:09-bk-06626 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

## DISCLOSURE STATEMENT

Bradley R. Markey, Esq.
**Stutsman Thames & Markey, P.A.**
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)

Attorneys for Ross & Logan Industries, Inc.

## Introduction

This Disclosure Statement is submitted by Ross & Logan Industries, Inc., a Florida corporation ("Ross & Logan" or "Debtor"), pursuant to § 1125 of the Bankruptcy Code. The purpose of this Disclosure Statement is to provide holders of claims against the debtor with sufficient information to make an informed judgment of whether to accept or reject the Plan of Reorganization (the "Plan") which Ross & Logan has filed with this Court.    The Disclosure Statement should be read in conjunction with the Plan.

To the extent this Disclosure Statement contains financial information, it was prepared from information provided by Debtor.  Debtor has made every attempt to provide reliable and accurate financial information; however, such information has not been subject to an independent certified audit to insure absolute accuracy.

The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself.  Except as otherwise expressly provided herein, capitalized terms used herein and defined in the Plan shall have the same meaning attributed to them in the Plan.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein, and delivery of this Disclosure Statement shall not create an implication that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the date the materials relied upon in preparation of this Disclosure Statement were compiled.

This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan, and nothing contained herein shall constitute an admission of fact or liability by any party, or be admissible in any proceeding involving the debtor or any other party, or be deemed conclusive advice on the tax or other legal effects of the reorganization on holders of claims or interests.

THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION, HAS APPROVED THIS DISCLOSURE STATEMENT, WHICH APPROVAL DOES NOT CONSTITUTE A DETERMINATION ON THE MERITS OF THE PLAN.    THE APPROVAL OF THE DISCLOSURE STATEMENT MEANS THAT THE BANKRUPTCY COURT HAS FOUND THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION TO PERMIT CREDITORS AND EQUITY INTEREST HOLDERS OF DEBTOR TO MAKE A REASONABLY INFORMED DECISION IN EXERCISING THEIR RIGHT TO VOTE UPON THE PLAN.

THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN, SHOULD BE READ IN ITS ENTIRETY.  ADDITIONALLY, IT MAY BE ADVISABLE FOR CREDITORS AND EQUITY SECURITY HOLDERS TO CONSULT THEIR OWN COUNSEL OR OTHER ADVISORS WITH RESPECT TO THE MATTERS CONTAINED HEREIN.

NO REPRESENTATIONS CONCERNING ROSS & LOGAN OR THE PLAN, OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT, HAVE BEEN AUTHORIZED BY ROSS & LOGAN OR THE BANKRUPTCY COURT.

## Overview of Chapter 11

Once a petition for reorganization is filed, actions to collect prepetition debts are stayed, and other contractual obligations may not be enforced.  These protections give debtors the opportunity to restructure their operations under court supervision and guarantee that all creditors will receive fair and equitable treatment.  After the commencement date, debtors are given the opportunity to restructure their operations and may obtain credit, sell assets, and reject executory contracts and lease obligations, subject to court approval. Debtors may then propose a plan of reorganization to restructure their obligations. Substantially all liabilities of a debtor as of a commencement date are subject to settlement under a plan of reorganization and are to be voted upon by all impaired classes of creditors and interest holders and approved by a bankruptcy court.  The approval of a plan of reorganization allows a debtor to emerge from bankruptcy and to continue operating its business without continued court supervision.

## Voting and Acceptance

Following approval of this Disclosure Statement, the bankruptcy court will schedule a hearing to consider confirmation and approval of the Plan.  Notice of that hearing will be provided to you, along with a copy of the Plan, this Disclosure Statement and a ballot for you to either accept or reject the Plan.

Under the Bankruptcy Code, not all creditors of the Debtor are entitled to cast a vote to accept or reject the Plan.  Only holders of claims that are "impaired" may vote.  However, any creditor or party in interest may appear at the confirmation hearing on the Plan and be heard by the court in support or opposition to the Plan, provided that parties opposing confirmation shall have timely filed an objection in writing with the bankruptcy court.

Under the Bankruptcy Code, a class of claims or interests is considered to have accepted the Plan if both a majority in number and two-thirds (2/3) of the dollar amount of those actually voting from that class vote to accept the Plan. The claims of those who do not vote are not counted in determining whether the requisite statutory majority in number and dollar amount have voted for acceptance. Acceptance by the statutory majority, however, will bind the minority who vote to reject the Plan. Pursuant to § 1129(b) of the Bankruptcy Code, the Plan may also be confirmed and become binding on creditors and parties in interest notwithstanding the rejection of the Plan by a class of creditors or interest holders if the Court finds that the Plan does not "discriminate unfairly" and is "fair and equitable" to such class in accordance with the provisions of § 1129(b).

IF YOU DO NOT VOTE, and no impaired Class accepts the Plan, the bankruptcy court may permit the secured creditors of Ross & Logan to enforce their rights in their collateral, which may in turn result in the non-payment of unsecured claims.

The information set forth herein is intended to help you arrive at a decision to either accept or reject the Plan.

### The Debtor

Ross & Logan is a family owned utility construction company headquartered at 10817 New Kings Road, Jacksonville, Florida 32219 (the "New Kings Road Property"). Ninety percent of the company's common stock is held by Larry Brantley; the remaining 10% is owned by his wife, Karen. The company specializes in providing underground site and utilities installations, demolition and roll-off services. Ross & Logan currently employs approximately 40 full-time employees. Ross & Logan is fully licensed, bonded and insured.

### Debt Structure

On August 7, 2009 (the "Petition Date"), Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

On the Petition Date, the New Kings Road Property was encumbered by a mortgage in favor of Mercantile Bank, N.A. ("Mercantile") to secure an indebtedness of approximately $1.7 million (the "Mercantile Secured Mortgage").

Mercantile also provided Ross & Logan with an operating line of credit of approximately $1.5 million (the "Mercantile Operating Line of Credit"), which credit facility was terminated by the bank prior to the Petition Date.

Ross & Logan owns approximately 55 pieces of heavy earth moving equipment. The majority of Ross & Logan's equipment and machinery was purchased utilizing equipment finance agreements with CAT Financial Services, Inc., FCC Equipment Financing, Inc., GMAC, Komatsu Financial Limited Partnership, Wells Fargo Equipment Finance, Inc. and Banc of America Leasing & Capital, LLC. Ross & Logan owed an aggregate amount of approximately $3,000,000 on equipment loans on the Petition Date.

On the Petition Date, the Debtor also had certain outstanding obligations payable to the Internal Revenue Service and the Duval County, Florida Tax Collector. The obligations owed to the Duval County, Florida Tax Collector relate to past due real property taxes. Tangible personal property taxes were current prepetition.

Trade payables totaled approximately $438,000.

### Events Leading to the Chapter 11 Case

The Debtor has been adversely affected by the recession and its impact on the construction industry as a whole. The downturn in the construction industry resulted in a number of unprofitable jobs and payment issues involving general contractors to whom Debtor was providing services. Profits from other jobs were used to pay off losses from unprofitable jobs which, in turn, required extensive use of the Mercantile line of credit.

Over the nine months preceding the Petition Date, Debtor aggressively pursued work on government construction contracts in replacement of its private contract work. As a result, the company had a number of ongoing government contracts in progress on the Petition Date, including a contract for site work on the new Duval County Courthouse. Though desirable, government contract work typically involves long delays in payment during which time the contractor / subcontractor must continue to pay ordinary overhead. The delays in payment in turn required further draws on the Mercantile line of credit to meet expenses.

Debtor's funds were also used to support another company owned by Larry Brantley and his wife, the owners of the Debtor, Brantley Cattle Company, Inc. ("BCC"). A further entanglement between BCC and Debtor exists because, although Debtor is the real party in interest, BCC is the party to a number of lease and financing agreements for equipment used and paid for by Debtor.

In July 2009, Mercantile prohibited further draws on the Mercantile Operating Line of Credit which were needed to fund payroll and other corporate obligations. That limitation was due, at least in part, to the bank reducing line availability below $1.5 million. Instead of giving the company full credit for a $1 million receivable for work performed on the

Duval County Courthouse project (as reported in the borrowing base certificates provided to Mercantile by Debtor), the bank discounted that receivable figure by 80%. The result was that the bank would not acknowledge availability under the line of credit.

As a direct result of the operating losses and the unavailability of additional credit under the operating line of credit, Debtor fell behind in payment to two of its three main equipment finance companies. One of those equipment finance companies sent Debtor a notice of default and that company as well as another threatened to repossess equipment on August 7, 2009. Faced with the liquidity cris and the potential loss of needed equipment, Debtor had little choice but to file its Chapter 11 petition.

## Historical Operating Results

Historically, Ross & Logan operated profitably before depreciation expense. The situation reversed itself in 2007 with the onset of the current recession. The historical performance of the company is set forth below:

| Year | Gross Revenues |
|------|----------------|
| 2007 | $29,620,522 |
| 2008 | $21,529,844 |
| 2009 (year to date) | $11,404,488[1] |

## Events During the Chapter 11 Case

**1.    Management.**

Pursuant to 11 U.S.C. § 1108, Ross & Logan has continued to operate its property and business affairs as a debtor-in-possession. No trustee has been appointed. The company is managed by its president, Larry Brantley, and his wife, Karen Brantley.

---

[1] Post-petition gross revenues amount to $2,662,253.

**2.**     **Professionals.**

The following professionals have been employed by Ross & Logan during the pendency of this reorganization:

Stutsman Thames & Markey, P.A., a Jacksonville, Florida based firm, has been employed as Ross & Logan's bankruptcy counsel. The primary lawyers involved in the reorganization are Richard R. Thames, a board certified business bankruptcy specialist with 21 years experience and Bradley R. Markey, who has 14 years experience.

Chad Allen Shultz, CPA was employed as an independent financial accountant. Shultz has been an accountant for over 10 years, has provided services to the Debtor in the past and is currently assisting with company accounting, tax reporting as well as certain Chapter 11 reporting requirements.

All compensation payable to professionals employed pursuant to 11 U.S.C. § 327 is subject to bankruptcy court approval following proper application and notice of hearing.

**3.**     **Executory Contracts and Unexpired Leases.**

As of the Petition Date, Ross & Logan was party to the following executory contracts and unexpired leases:

| Lessor | Description |
|---|---|
| Deere Credit | Two John Deere Model 2500 articulated dump trucks |
| Marlin Leasing | Earthwork 3D software, GTC0303G Roll-Up III digitizer |
| CIT Technology Financing | C252 Konica copier, KIP3002 copier (Lease No. 900-0128467-000) |
| Banc of America Leasing & Capital, LLC | Caterpillar motor grader AM201084 |

| | |
|---|---|
| Komatsu Financial Limited Partnership | Komatsu Wheel Loader WA250-5L, Komatsu Wheel Loader WA310-5L, Komatsu Hydraulic Excavator PC300LC-7E, Komatsu Hydraulic Excavator PC50MR-2, Komatsu Hydraulic Excavator PC300LC-7E, Komatsu Hydraulic Excavator PC400LC-8, Komatsu Excavator PC300LC-7, Komatsu WA320 Loader & WA400-5L Loader, Komatsu Wheel Loader WA380-5L, Komatsu Crawler Dozer D61PX-15 |
| Wells Fargo Equipment Finance, Inc. | 2009 Peterbilt Model 335 Lube Truck |
| FCC Equipment Financing, Inc. | 2006 Chevrolet Silverado, 2007 Chevrolet Tahoe LS/LT, Dynapac 3 Wheel Steel Roller CS142N, Metso / Nordberg Portable Crusher LT-1110S, 2007 Chevrolet Silverado, 2007 Chevrolet Colorado, Komatsu PC400LC-7 Hydraulic Excavator, Coupler, Grappler, 2006 GMC 5500, 2007 Trail King Trailer, 2007 Kenworth T800 Roll Off, 2006 Peterbilt 379, 2006 Kenworth W900L, 2006 Peterbilt 379, 2007 Kenworth T800, Caterpillar Grader 12G, Dust Boss 3 Wheel Boster Pump, CTS Dump Trailer, Trimble Robotic Survey Pro 5603 DR200 with Radio **[Stolen]**, Grabble Lavounty TW70 **[Stolen]** |
| Caterpillar Financial Services Corporation | Challenger Rosco Broom, Caterpillar Wheel Loader 938G11, Caterpillar Motor Grader 12H, Caterpillar Skid Loader 248B, Caterpillar Skid Steer Loader w/ GP Bucket, Caterpillar Track-Type Tractor D5GLGP |

| | |
|---|---|
| GMAC | 2005 Chevrolet Pickup, 2007 Chevrolet Tahoe LS/LT, 2005 Chevrolet Pickup, 2005 Chevrolet Silverado, 2006 Chevrolet Silverado, 2006 Chevrolet Silverado, 2006 Chevrolet Silverado, 2007 Chevrolet Express Pass Van, 2007 Chevrolet Silverado, 2007 Chevrolet Silverado, 2007 Chevrolet Silverado, 2007 Chevrolet Silverado, 2008 Chevrolet Silverado, 2008 Chevrolet Silverado, 2008 Chevrolet Silverado, 2008 Chevrolet Silverado, 2007 Chevrolet CK30943, 2007 Chevrolet Silverado 35, 2006 Chevrolet Silverado 25, 2007 Chevrolet Silverado, 2007 Chevrolet Silverado, 2008 Chevrolet Silverado |
| American Enterprise Bank of Florida | 1991 Peterbilt Watertruck, Komatsu Excavator PC300LC-7, 2005 Peterbilt Tractor Model 378 |
| IronStone Bank | 2 Montone dump trucks |
| Brasfield & Gorrie, LLC | HCA Memorial CDD Renovation |
| Danis Building Construction Co. | The Nemours Home Office |
| Elkins Constructors, Inc. | 19th Terrace |
| Elkins Constructors, Inc. | Medical Development Corporate Office |
| Fullard Environmental Controls, Inc. | Clear and Grub of 6 DMMAs |
| Fullard Environmental Controls, Inc. | Base Infrastructure, Golf Course Phase 1 |
| Fullard Environmental Controls, Inc. | Turnkey Demolition of 22 Buildings |
| Fullard Environmental Controls, Inc. | Center for Disease Control NIOSH |
| Fullard Environmental Controls, Inc. | Turnkey Demolition of Pier 2 |
| Fullard Environmental Controls, Inc. | Buildings 95, 96,167, 267, 351, etc. Project |
| McDonald Construction Co., Inc. | Statesboro High School |

| McDonald Construction Co., Inc. | Sally D. Meadows Elementary School |
| Nassau County Board of Commissioners | Gene Lasserre / A1A Intersection Improvements |
| Skanska USA Building, Inc. | Bartram Springs K-5 No.161 |
| Teng Construction, LLC | Brigade Combat Team - 1st Brigade, Fort Stewart, GA |
| Thomas May Construction Co. | West Augustine District Park and Community Center Pool |
| Towers Group, Inc., The | New High School DDD |
| Towers Group, Inc., The | JPA / Dames Point Container Terminal Project #2 |
| Towers Group, Inc., The | Regional Training Institute Phase III Camp Building |
| Towers Group, Inc., The | Regional Training Institute Phase IV Camp Building |
| Turner Construction Company | Duval County Unified Courts Facility |

4.    **Claims Bar Date.**


By order entered December 10, 2009, January 11, 2010 (the "Claims Bar Date") was established as the deadline for filing proofs of claim in this case. If a Claim was listed in the schedules as non-contingent, liquidated and undisputed, a Proof of Claim need not be filed. Creditors are responsible for examining the schedules to determine the necessity of filing a Proof of Claim. Creditors are advised to monitor the case for any amendments to the schedules which may impact the necessity of filing a proof of claim, as the Debtor anticipates several amendments or objections being filed to eliminate prepetition claims which have been paid pursuant to Court order or through direct third-party payments.


## The Plan


Ross & Logan has proposed a plan of reorganization to deal with the Debtor's debt burdens. The Plan contemplates the continuation of the Debtor's business as a going concern

-10-

and will be funded through revenues generated in the ordinary course of business. The Plan is intended to ensure that all creditors receive as much or more than they would receive in a liquidation of the company without forcing a shutdown of the company.

### Classification of Claims

The Plan classifies claims and interests separately in accordance with the provisions of the Bankruptcy Code, and provides different treatment for different classes of claims and interests. A summary of all claims and their classification is set forth below:

| Class | Class Type | Claimant | Claim Amount[2] |
|-------|-----------|----------|-----------------|
| 1 | Admin. | Stutsman Thames & Markey, P.A.<br>Chad Allen Shultz, CPA | $45,000.00[3]<br>$20,000.00 |
| 2 | Priority | Internal Revenue Service | $69,097.89 |
| 3 | Secured | Duval County, Florida  Tax Collector (property taxes) | $28,995.03 |
| 4 | Secured | Komatsu Financial Limited Partnership | $829,367.00 |
| 5 | Secured | FCC Equipment Financing, Inc. | $1,760,004.66 |
| 6 | Secured | Caterpillar Financial Services Corporation | $445,851.76 |
| 7 | Secured | GMAC | $436,409.14 |
| 8 | Secured | American Enterprise Bank of Florida | $111,393.56 |
| 9 | Secured | Mercantile Bank (Line of Credit) | $1,331,430.21 |
| 10 | Secured | Mercantile Bank (Real Estate Loan) | $1,767,000.00 |
| 11 | Unsecured | Various | $1,370,148.07[4] |

---

[2] Reflects both scheduled claims and filed proofs of claim. Ross & Logan reserves the right to object to the amount or validity of any Claim and the listing of any Claim herein shall not be deemed to be an admission of any kind as to the validity or amount of any Claim.

[3] Estimated. Stutsman Thames & Markey received a prepetition retainer of $60,000 for services to be rendered in connection with this case.

[4] Prepetition unsecured claims amounted to $2,393,803.52. Pursuant to orders dated September 1, 2009, Debtor was permitted to pay certain critical vendors and sub-contractors who performed work prepetition where they had lien rights. The current Claim Amount

| 12 | Equity | Larry Brantley | 90% |
|----|--------|----------------|-----|
|    |        | Karen Brantley | 10% |

## Purpose of the Plan

In formulating the Plan, the primary goal of the debtor was to find an acceptable way to repay creditors while maintaining an ongoing business enterprise as a viable and profitable entity. Ross & Logan has determined that a liquidation of Debtor's property would not be in the best interest of creditors and would in fact produce less for secured and unsecured creditors than would be achieved by the Plan.

ROSS & LOGAN BELIEVES THAT THE PLAN AS NEGOTIATED AND PROPOSED PROVIDES THE GREATEST AND EARLIEST POSSIBLE DISTRIBUTIONS TO CREDITORS OF ROSS & LOGAN. ROSS & LOGAN THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF EACH CLASS OF CREDITORS AND INTEREST HOLDERS OF ROSS & LOGAN AND RECOMMENDS THAT THEY VOTE TO ACCEPT THE PLAN.

## Summary of the Plan

**Class 1.** **Administrative Claims.** Administrative Claims, as defined under 11 U.S.C. § 507(a)(1) and as allowed under 11 U.S.C. § 503(b), will be paid in full within 30 days of the Effective Date, or as otherwise agreed between Debtor and the Administrative Claim holder. Quarterly fees payable to the Office of the United States Trustee will be paid when due in the ordinary course through the entry of the Final Decree.

**Class 2.** **Internal Revenue Service (Priority Claim).** As of the Petition Date, Debtor owed $63,384.16 in 941 employment taxes for the quarter ending September 30, 2009. That amount has been paid in full by Debtor. The IRS continues to seek late fees and penalties in the amount of $9,944.35, which will be allowed and paid as a Class 11 General Unsecured Claim.

**Class 3.** **Duval County Tax Collector.** The Debtor shall surrender the New Kings Road Property to its secured creditors, the Duval County Tax Collector, Mercantile and American Enterprise Bank in complete satisfaction of their secured claims. Upon the Effective Date, the automatic stay of § 362 of the Bankruptcy Code and the discharge

---

represents amounts due to unsecured creditors after payment of those amounts.

injunction of § 524 shall be deemed terminated to allow the Duval County Tax Collector to enforce its *in rem* remedies against the New Kings Road Property.

**Class 4.**   **Komatsu Financial Limited Partnership.**   Komatsu's Allowed Secured Claim of $587,500 shall be paid in monthly installments of principal and interest amortized over 5 years with 6% interest. Adequate protection payments made during the pendency of the case will be credited towards the satisfaction of the Debtor's plan obligations. Komatsu shall retain its lien until its Allowed Secured Claim is paid in full. Komatsu shall be entitled to an Allowed Unsecured Claim in the amount of $241,867.21 for any deficiency following its liquidation of equipment previously surrendered by Debtor and for shortfalls on values as opposed to contractual amounts due on the retained equipment. Amounts recovered from the sale of surrendered equipment will be credited against the Unsecured Claim amount.

**Class 5.**   **FCC Equipment Financing, Inc.**   FCC's Allowed Secured Claim shall be paid in monthly installments of principal and interest amortized over 5 years with 6% interest. Any adequate protection payments made during the pendency of the case will be credited towards the satisfaction of the Debtor's plan obligations. FCC shall be entitled to an Allowed Unsecured Claim for any deficiency following its liquidation of equipment previously surrendered by Debtor and for shortfalls on values as opposed to contractual amounts due on the retained equipment. Amounts recovered from the sale of surrendered equipment will be credited against the Unsecured Claim amount.

**Class 6.**   **Caterpillar Financial Services Corporation.**   Caterpillar's Allowed Secured Claim shall be paid in monthly installments of principal and interest amortized over 5 years with 6% interest. Any adequate protection payments made during the pendency of the case will be credited towards the satisfaction of the Debtor's plan obligations. Caterpillar shall be entitled to an Allowed Unsecured Claim for any deficiency following its liquidation of equipment previously surrendered by Debtor and for shortfalls on values as opposed to contractual amounts due on the retained equipment. Amounts recovered from the sale of surrendered equipment will be credited against the Unsecured Claim amount.

**Class 7.**   **GMAC.**   GMAC's Allowed Secured Claim of $246,813.01 shall be paid in monthly installments of principal and interest amortized over 5 years with 2.5% interest. Any adequate protection payments made during the pendency of the case will be credited towards the satisfaction of the Debtor's plan obligations. GMAC shall be entitled to an Allowed Unsecured Claim in the amount of $189,596.13 for any deficiency following its liquidation of equipment previously surrendered by Debtor and for shortfalls on values as opposed to contractual amounts due on the retained equipment. Amounts recovered from the sale of surrendered equipment will be credited against the Unsecured Claim amount.

**Class 8.**   **American Enterprise Bank of Florida.**   American Enterprise's Allowed Secured Claim shall be paid in monthly installments of principal and interest

amortized over 5 years with 6% interest. Any adequate protection payments made during the pendency of the case will be credited towards the satisfaction of the Debtor's plan obligations. American Enterprise shall be entitled to an Allowed Unsecured Claim for any deficiency following its liquidation of equipment previously surrendered by Debtor and for shortfalls on values as opposed to contractual amounts due on the retained equipment. Amounts recovered from the sale of surrendered equipment will be credited against the Unsecured Claim amount.

American Enterprise claims a second mortgage on the New Kings Road Property from which Debtor operates, in connection with Debtor's guaranty of debt obligations of its owner, Larry Brantley. Debtor disputes that a secured lien attaches to the real property. The New Kings Road property will in any event be surrendered to its secured creditors in satisfaction of their secured claims. The automatic stay of § 362 and the discharge injunction of § 524 shall be deemed terminated and dissolved upon the Effective Date to permit Enterprise Bank to enforce its *in rem* remedies, if any, against the New Kings Road Property.

**Class 9.    Mercantile Bank Operating Line of Credit.** Mercantile is owed $1,331,430.21 for amounts drawn on Debtor's operating line of credit. During the pendency of this Chapter 11 case, Debtor has been providing monthly adequate protection payments to Mercantile of $5,000, which payments were increased to $15,000 effective January 2010. The remaining balance of Mercantile's Allowed Secured Claim shall be paid in monthly installments of principal and interest amortized over 10 years with 6% interest of $14,781.61 with a balloon payment of all remaining principal and interest on April 2016

**Class 10.    Mercantile Bank Secured Mortgage.** Mercantile also holds a mortgage on the New Kings Road Property to secure a note obligation of approximately $1,767,000. Debtor will surrender the New Kings Road Property to Mercantile in full satisfaction of its Allowed Secured Claim. The automatic stay of § 362 and the discharge injunction of § 524 shall be terminated as of the Effective Date to permit Mercantile to enforce *in rem* remedies against the New Kings Road Property. Any amounts recovered by Mercantile from the sale of the New Kings Road Property in excess of the mortgage indebtedness shall be applied to Debtor's remaining obligations on the operating line of credit.

**Class 11.    Unsecured Claims.** The Allowed Claims of Unsecured Creditors will share in a pro-rata distribution of twenty (20) quarterly distributions of $10,000 each commencing July 1, 2010 and continuing on the first day of each quarter thereafter.

Unsecured creditors whose Claims are subject to dispute or objection shall receive no distribution until such objection or dispute is resolved by final order. The Debtor shall, however, reserve funds to make the proportionate distribution to such creditors until such time as all claims objections have been finally determined. All funds reserved on account

of Disallowed Claims shall be distributed pro-rata to all other unsecured claims at the conclusion of the claims objection process.

Pursuant to 11 U.S.C. § 502(d), no payments shall be made to any entity from which property is recoverable under §§ 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, unless such entity or transferee has paid the amount, or turned over any such property from which such entity or transferee is liable under §§ 522(i), 542, 543, 550 or 553 of the Bankruptcy Code. The Claim of any recipient of a payment avoidable under §§ 542, 543, 550 or 553 of the Bankruptcy Code who fails to pay or turnover the amount of the payment to the Debtor within 60 days of a judgment or order avoiding the transfer or requiring such turnover shall be extinguished and forever barred.

All Unsecured Claims of Insiders shall be subordinated to the payment of all other General Unsecured Claims.

**Class 12.**    **Equity Interests.** Larry Brantley and Karen Brantley will retain their equity interests in the Debtor in exchange for their personal guaranty of the payment of all Administrative Expense Claims.

## Means of Implementation

The Plan will be implemented and funded through the continued operation of Ross & Logan's business and from the collection of prepetition receivables. The restructuring of the equipment loans and the surrender of the New Kings Road Property are expected to result in significant monthly cash flow savings, which in turn will improve the Debtor's prospects for successfully fulfilling its obligations under the Plan. Larry Brantley and Karen Brantley have also agreed to contribute the funds necessary to pay Class 1 Administrative Expense creditors to the extent the Debtor does not have the funds to pay such Claimants.

## Executory Contracts

On the Petition Date, Ross & Logan had the following executory contracts in process (the "Project Contracts"):

| Party | Job Description |
|---|---|
| Brasfield & Gorrie, LLC | HCA Memorial CDD Renovation |

| | |
|---|---|
| Danis Building Construction Co. | The Nemours Home Office |
| Elkins Constructors, Inc. | 19th Terrace |
| Elkins Constructors, Inc. | Medical Development Corporate Office |
| Fullard Environmental Controls, Inc. | Clear and Grub of 6 DMMAs |
| Fullard Environmental Controls, Inc. | Base Infrastructure, Golf Course Phase 1 |
| Fullard Environmental Controls, Inc. | Turnkey Demolition of 22 Buildings |
| Fullard Environmental Controls, Inc. | Center for Disease Control NIOSH |
| Fullard Environmental Controls, Inc. | Turnkey Demolition of Pier 2 |
| Fullard Environmental Controls, Inc. | Buildings 95, 96,167, 267, 351, etc. Project |
| McDonald Construction Co., Inc. | Statesboro High School |
| McDonald Construction Co., Inc. | Sally D. Meadows Elementary School |
| Nassau County Board of Commissioners | Gene Lasserre / A1A Intersection Improvements |
| Skanska USA Building, Inc. | Bartram Springs K-5 No.161 |
| Teng Construction, LLC | Brigade Combat Team - 1st Brigade, Fort Stewart, GA |
| Thomas May Construction Co. | West Augustine District Park and Community Center Pool |
| Towers Group, Inc., The | New High School DDD |
| Towers Group, Inc., The | JPA / Dames Point Container Terminal Project #2 |
| Towers Group, Inc., The | Regional Training Institute Phase III Camp Building |
| Towers Group, Inc., The | Regional Training Institute Phase IV Camp Building |
| Turner Construction Company | Duval County Unified Courts Facility |

Debtor continues work on the projects listed and has acquired new bonded work post-petition. Debtor intends to assume all of the Project Contracts to the extent such projects remain executory.

All executory contracts not assumed prior to the Confirmation Date will be rejected.

Any party to a contract or lease that claims damages from the rejection of such lease or contract must file a Claim for such damages within 30 days of (i) the rejection of such contract or lease; or (ii) confirmation of the Plan, whichever is earlier, or be forever barred from asserting such Claim. Any timely Allowed Rejection Claim shall be treated as a Class 11 Unsecured Claim.

### Assumption of Certain Equipment Finance Contracts between Brantley Cattle Company, Inc. and Caterpillar Financial Services Corporation

Debtor has been using in its business and paying the associated costs of certain equipment which its affiliate, Brantley Cattle Company, Inc. ("BCC") financed through Caterpillar Financial Services Corporation ("Caterpillar"). There is no written lease between the Debtor and BCC. The lease relationship is being formalized in conjunction with a proposed restructuring of the obligations with Caterpillar.

### Business Relocation

Since it is Debtor's intention to surrender the New Kings Road Property, it will be leasing alternative space from which to operate. It anticipates paying $2,000 per month in rent which represents a reduction of $12,000 per month to the Debtor as compared to the payments being made prepetition to Mercantile on the note secured by the New Kings Road mortgage.

### Effective Date of the Plan

In accordance with the Plan, the Effective Date of the Plan shall be the first business day arising 30 days following the date upon which the Confirmation Order is no longer subject to appeal or certiorari proceedings, or in the event of an appeal, upon which an order confirming the Confirmation Order becomes final and is no longer subject to further appeal or certiorari proceedings or such other earlier date as the debtor shall designate in a written notice filed with the bankruptcy court.

-17-

## Post Confirmation Management

After confirmation, the Debtor will continue to be managed by Larry Brantley and his wife, Karen, who will continue to draw and receive their court approved salary and benefits, subject to available cash flow. Larry Brantley will receive a salary of $3,500 per week. Karen Brantley will receive a salary of $1,925 per week. Debtor will continue providing disability insurance, accident insurance, group term insurance for Larry Brantley, group term insurance for Joshua Brantley, health insurance and other benefits to Larry Brantley and Karen Brantley in the same manner as that provided prepetition. Additionally, the Brantleys will be reimbursed for their reasonable business expenses.

Since Ross & Logan is a subchapter S corporation, Debtor reserves the right to make additional distributions to Larry Brantley to fund any tax obligations attributable to the operation of the business.

## Feasibility of the Plan

Ross & Logan came into this Chapter 11 case with limited funds in hand due to the depletion of working capital and because Mercantile had frozen its operating lin of credit (See "Events Leading to Chapter 11 Case," *supra*). During the pendency of this case, Ross & Logan has established its ability to maintain all post-petition liabilities. A budget reflecting the anticipated post-confirmation expenditures is attached as **Exhibit A**. These projections have been prepared in connection with the development of the plan of reorganization and assume that the terms of the plan will be implemented in accordance with its terms.

Although Ross & Logan believes that the assumptions described in **Exhibit A** are reasonable in light of the circumstances under which they were made, no assurances can be given that the projections will be realized. Ross & Logan urges all creditors and investors to examine carefully the assumptions in evaluating the projections and the Plan, and to consult with their own counsel and tax advisors regarding same.

## Risk Factors

The following is intended as a summary of certain risks associated with the Plan, but it is not exhaustive and must be supplemented by the analysis and evaluation made by each holder of a Claim or Equity Interest of the Plan and this Disclosure Statement as a whole with such holder's own advisors.

## A.    **Bankruptcy Risks**

### 1.    **Insufficient Acceptances**

For the Plan to be confirmed, each impaired Class of Claims and Interests is given the opportunity to vote to accept or reject the Plan, except, however, for those Classes which will not receive any distribution under the Plan and which are, therefore, considered to have rejected the Plan. With regard to the impaired Classes which vote on the Plan, the Plan will be deemed accepted by a Class of impaired Claims if the Plan is accepted by holders of Claims of such Class actually voting on the Plan who hold at least two-thirds (2/3) in an amount and more than one-half (½) in number of the total Allowed Claims of such Class. The Plan will be deemed accepted by a Class of impaired Interests if it is accepted by the members actually voting on the Plan who hold at least two-thirds (2/3) in an amount of the total Allowed Interests voted. Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes.

If any impaired Class of Claims or Interests does not accept the Plan, pursuant to § 1129(b) of the Bankruptcy Code, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, among other things, as to each impaired Class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." The Debtor believes that the Plan affords fair and equitable treatment for all Allowed Claims and Interests. If one or more of the impaired Classes of Claims or Interests votes to reject the Plan, the Debtor may request that the Bankruptcy Court confirm the Plan by application of the "cramdown" procedures available under § 1129(b) of the Bankruptcy Code. However, there can be no assurance that the Debtor will be able to use the cramdown provisions of the Bankruptcy Code for Confirmation of the Plan. Any modification of the Plan necessary to effect a cramdown may result in a different treatment of Claims and Interests than those currently afforded in the Plan, which, as to any Claim or Interest, may be less favorable, and distributions to holders of Claims and Interests may be delayed.

### 2.    **Confirmation Risks**

Any objection to the Plan by a member of a Class of Claims or Interests could either prevent Confirmation of the Plan or delay such Confirmation for a significant period of time.

### 3.    **Conditions Precedent**

Confirmation of the Plan and occurrence of the Effective Date are subject to certain conditions precedent that may not occur. The Debtor, however, is working diligently with all parties in interest to ensure that all conditions precedent are satisfied.

**B.    Economic Risks**

### 1.    Economic Recession

The Debtor's projected success is based on experience and take into account normal fluctuations in the economy. Nonetheless, a prolonged continuation of the current recession could adversely affect the Debtor. Although the Debtor believes that its projections can withstand further economic downturn, the Debtor cannot guarantee that a severe recession or long-term depression will not occur. In the event of such an occurrence, the Debtor could face difficulties in meeting its financial goals.

### 2.    Leverage

The following specific risks exist with respect to Confirmation of the Plan: The Reorganized Debtor's leverage makes it less able to withstand adverse economic conditions than other companies (including certain competitors) with a stronger capitalization. The ability of The Reorganized Debtor to meet its debt service obligations will depend on The Reorganized Debtor's future performance, which in turn is subject to financial, economic, competitive, and other factors affecting the Reorganized Debtor, many of which are beyond the Reorganized Debtor's control or ability to predict.

### 3.    Loss of Bonding Capacity.
Debtor's ability to bid or perform work on government contracts is to a large extent contingent on its ability to obtain bonding from reputable sureties. The loss of bonding capacity would have a dramatic negative affect on Ross & Logan's ability to reorganize.

### Preference and Fraudulent Transfer Claims

Pursuant to § 547 of the Bankruptcy Code, a debtor in possession may avoid as a preference a transfer of property made by the debtor to or for the benefit of a creditor on account of an antecedent debt while the debtor was insolvent, if that creditor received more than it would have received in a liquidation of the debtor under Chapter 7 of the Bankruptcy Code had the payment not been made and if the payment was made (i) within 90 days before the date that the Bankruptcy Case commenced, or (ii) if the creditor is an "insider" as defined in the Bankruptcy Code, within one year before the commencement of the Bankruptcy Case. A debtor is presumed to have been insolvent during the 90 days preceding the commencement of its Bankruptcy Case. The power to avoid preferences is subject to a number of exceptions set forth in § 547 of the Bankruptcy Code, including one exception applicable to the payment of obligations in the ordinary course of business on ordinary business terms. Furthermore, if the transferee extended credit subsequent to the transfer (and

prior to the commencement of the Bankruptcy Case) for which the transferee was not repaid, such extension constitutes an offset against any otherwise recoverable transfer of property. If a transfer is recovered by the debtor, the transferee obtains a general unsecured claim against the debtor to the extent of the recovery. The Debtor has not yet completed its review of potential preference recoveries.

Pursuant to § 548 of the Bankruptcy Code, a debtor in possession may also avoid a fraudulent transfer of property, including the granting of a security interest in property, made while the debtor was insolvent or which rendered the debtor insolvent, if the debtor received less than reasonably equivalent value in exchange for such property and if the transfer was made within one year before the commencement of the Bankruptcy Case. Pursuant to § 544 of the Bankruptcy Code, a debtor in possession may avoid a transfer of property that is avoidable under applicable non-bankruptcy law. Section 544 of the Bankruptcy Code enables a debtor to apply applicable state laws, including fraudulent conveyance laws, to avoid a transfer of property.

As indicated previously herein, Ross & Logan has paid significant obligations of an affiliated company, Brantley Cattle Company. As a result, fraudulent transfer claims may exist with respect to Brantley Cattle Company. Those claims are, however, mitigated by Brantley Cattle Company's provision of equipment and equipment storage to Ross & Logan. Brantley Cattle Company is also highly leveraged and is struggling financially itself. The Debtor does not therefore believe the claims against Brantley Cattle Company are viable and will not be pursued.

Pursuant to § 1123(b)(3) of the Bankruptcy Code, Debtor shall retain and have the exclusive right to enforce against any person or governmental unit any and all causes of action and rights of the Debtor that arose both before and after the Petition Date, including the rights and powers of a trustee and debtor in possession and all causes of action granted pursuant to and still existing under §§ 502, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

## Federal Tax Consequences

Generally, a holder of a claim that receives a distribution under a plan of reorganization with respect to its claim for interest will recognize ordinary income to the extent it receives cash or property in respect of interest that has not already been included by the holder in income for federal income tax purposes under its method of accounting. If the cash and other property allocable to interest is less than the amount previously included as interest in the holder's federal income tax return, the discharged portion may be deducted in the taxable year in which the Effective Date occurs.

A holder who, under the Plan, receives cash and property in respect of a claim (other than a claim constituting a "security") an amount (other than interest) less than the holder's tax basis in that claim may be entitled in the year of receipt (or in an earlier year) to a bad debt deduction in some amount under section 166(a) of the Tax Code. The rules governing

the timing, amount and character (i.e. ordinary or short-term capital loss) of bad debt deductions, depend in large part on the facts and circumstances of the holder, the obligor, and the instrument with respect to which a deduction is claimed. Holders of claims are therefore urged to consult their own tax advisors regarding the "bad debt" deduction.

No ruling has been requested of the Internal Revenue Service as to any issues referred to or discussed in this section. Ross & Logan does not intend to request any such ruling. In the absence of such a ruling, no assurance can be given that any of the anticipated tax results will be achieved. Nothing stated in the discussion which follows is or should be construed as tax advise to any creditor of Ross & Logan. CREDITORS AND EQUITY INTEREST HOLDERS SHOULD CONSULT WITH THEIR OWN TAX ADVISOR REGARDING THE TAX CONSEQUENCES OF THE PLAN.

## Applicability of Federal and Other Securities Laws

Under § 1125 of the Bankruptcy Code, any person that solicits acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, or that participates, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale or purchase of a security offered or sold under the Plan will not be liable, on account of such solicitation or participation, for violation of any applicable law, rule or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities, including federal and state securities laws.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR DOES THE DEBTOR INTEND TO SEEK SUCH APPROVAL.

## Effect of Confirmation

Upon confirmation, Ross & Logan's assets will revert from the bankruptcy estate to the reorganized debtor, subject only to the liens and security interests held by the Duval County, Florida Tax Collector, Komatsu Financial Limited Partnership, Wells Fargo Equipment Finance, Inc., FCC Equipment Financing, Inc., Caterpillar Financial Services Corporation, GMAC, American Enterprise Bank of Florida, Mercantile Bank and any other secured creditor whose claim is allowed, but free and clear of any and all other liens and encumbrances to secure the payment or repayment of any sum of money or the performance of any obligation.

Payments of, distributions to, and other treatment of the Claims of all creditors and equity interests provided for in the Plan shall be deemed to be in complete satisfaction, discharge and release of such Claims. All renewed loans (and recharacterized loans) shall be deemed reinstated and de-accelerated as if there were no defaults and any delinquency

therewith shall be deemed void. Except as provided herein, the rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued thereon from and after the Filing Date, against Ross & Logan or any of Ross & Logan's assets. Except as otherwise provided in the Plan, all creditors and equity interest holders shall be permanently enjoined and precluded from asserting any Claim against Ross & Logan or any of Debtor's assets based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. Confirmation shall not, however, be construed as a release of any rights or obligations under the Plan or as an injunction against any action to enforce any rights or obligations under the Plan, nor shall confirmation of the Plan impact any guaranty of Ross & Logan's indebtedness by third parties.

## Alternatives to Confirmation and Consummation of the Plan

The Debtor has evaluated several reorganization alternatives to the Plan, including the continued operation of the Debtor under its current operating and debt structures, the sale of the Debtor as a going concern, and the liquidation of the Debtor. After studying these alternatives, the Debtor concluded that the Plan is the best alternative and will maximize recoveries by holders of Claims, assuming confirmation of the Plan and consummation of the transactions contemplated by the Plan. The following discussion provides a summary of the Debtor's analysis leading to its conclusion that the Plan will provide the highest value to holders of Claims.

### A.    Continued Operation Under Prepetition Operating and Debt Structure.

Ross & Logan determined that it could not continue operating absent reorganization under Chapter 11 of the Bankruptcy Code. Debtor's secured debt obligations were in default, it had no access to its working line of credit and Debtor risked losing the equipment needed to perform its contracts.

Accordingly, the Debtor determined that to continue operation under its existing operating and debt structure, or implementing the needed restructuring outside of chapter 11, would not have remedied the financial problems to which the Debtor was subject.

### B.    Sale Alternative.

The Debtor believes that a sale at this time would be on a distressed basis and would produce no benefit to unsecured creditors, particularly given the state of the construction industry in Northeast Florida and the Southeast. The Debtor therefore believes that the future operations of the Reorganized Debtor will generate substantially greater consideration for

the payment of creditors' claims than the proceeds of any sale of the Debtor's assets in the near future.

Moreover, the Debtor considers it unlikely that any buyer would be able to implement a business plan that could achieve revenues significantly greater than those projected by the Debtor or provide a means of reducing costs below those projected by the Debtor, and thereby justify a valuation of the Debtor's business greater than the valuation estimated by the Debtor and upon which the Plan is based. In light of the above factors, the Debtor concluded that it would be very unlikely that a prospective purchaser of the Debtor or its business would emerge that would propose a transaction with a value to creditors greater than that provided by the Plan.

C.      **Liquidation Alternative**.

The Debtor also has analyzed whether a chapter 7 liquidation of the assets of the Debtor would be in the best interest of holders of Claims. That analysis reflects a liquidation value that is materially lower than the value that may be realized through the Plan. The Debtor believes that liquidation would result in substantial diminution in the value to be realized by holders of Claims because of (i) the failure to realize the greater going-concern value of the Debtor's assets; (ii) additional administrative expenses involved in the appointment of a trustee or trustees, attorneys, accountants, and other professionals to assist such trustee(s) in the case of a chapter 7 proceeding; (iii) additional expenses and claims, some of which would be entitled to priority in payments, which would arise by reason of the liquidation and from the inability of Debtor to complete current projects and the rejection of leases and other executory contracts in connection with a cessation of the Debtor's operations; and (iv) the substantial time which would elapse before creditors would receive any distribution in respect of their Claims. Consequently, the Debtor believes that the Plan, which provides for the continuation of the Debtor's core business, provides substantially greater return to holders of Claims that would liquidation. A liquidations analysis is set forth below.

D.      **Alternatives if Plan is Not Confirmed**.

If the Plan is not confirmed, the Debtor or any other party in interest in the Chapter 11 Case could attempt to formulate and propose a different plan or plans of reorganization. Such plans might involve either a reorganization and continuation of the Debtor's business, a sale of the Debtor's business as a going concern, an orderly liquidation of the Debtor's assets, or a combination thereof. Further, if no plan of reorganization can be confirmed, the Chapter 11 Case may be converted to a liquidation proceeding under chapter 7 of the Bankruptcy Code. In a chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor. The proceeds of the liquidation would be distributed to the creditors of the Debtor in accordance with the priorities established by the Bankruptcy Code.

## Liquidation Analysis

As indicated above, an alterative to this Plan is liquidation under Chapter 7 of the Bankruptcy Code. In a Chapter 7 liquidation, a trustee would be appointed to liquidate the debtor's assets. Although a trustee could obtain permission to operate the business for a limited amount of time, most likely the trustee would be forced to surrender the property to the secured lender who would foreclose its interests in the property and take title to same.[5]

In a liquidation scenario, most of the general contractors on Ross & Logan's projects would likely withhold payment as offsets for warranty claims and construction defects. Additional offsets would likely be taken for "cover costs" of finding replacement site contractors as well as potential delay damage claims. In a forced liquidation, Ross & Logan estimates its current receivables would be worth only 40% of face value. Those receivables serve as collateral on Debtor's obligations to Mercantile Bank. The proceeds would therefore not be available to pay to unsecured claims.

If forced to liquidate its owned automobiles, machinery and equipment through forced sale, Debtor would likely receive only 50% of its book value. After satisfaction of outstanding liens, Debtor would realize a recovery on only its owed equipment estimated to be $423,447, as further described on **Exhibit B**.

Debtor's office equipment and business materials would likely bring only 40% of the book value in a forced liquidation.

Debtor typically carries around $410,000 in current payables on a monthly basis. Unsecured claims will likely increase by over $800,000 following a forced liquidation of the Debtor.

Based on the foregoing estimates, the distribution to unsecured creditors would likely be as follows:

Cash                                                    $28,500.00[6]

Net Proceeds from Equipment Liquidation
          (Over and above secured debt)                 $423,447.00

---

[5] Any proposed distribution to creditors would also have to provide for the costs and expenses of the liquidation, including statutory compensation to the trustee. Any remaining funds would be distributed first to administrative claims, then to priority claims and any balance to the unsecured creditors. The figures set forth herein include estimated liquidation costs.

[6] Bank balances as of December 17, 2009 after consideration of outstanding checks.

| | |
|---|---|
| Preference Recoveries | $0.00 |
| Collection on A/R | $804,495.00[7] |
| Gross Proceeds Available for Distribution | $1,257,942.00 |
| Estimated Fees of Trustee, Trustee's Attorney and Accountant | ($50,000.00) |
| Secured claims of Mercantile Bank | ($1,331,430.21) |
| Other Administrative Costs | $410,000.00[8] |
| Net Proceeds Available for Distribution | $0.00 |
| Amount Available to Unsecured Creditors | $0.00 |

ROSS & LOGAN BELIEVES THAT THE PLAN AS NEGOTIATED AND PROPOSED PROVIDES THE GREATEST AND EARLIEST POSSIBLE DISTRIBUTIONS TO CREDITORS AND INTEREST HOLDERS OF ROSS & LOGAN. ROSS & LOGAN THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF EACH CLASS OF CREDITORS AND INTEREST HOLDERS OF ROSS & LOGAN AND RECOMMENDS THAT THEY VOTE TO ACCEPT THE PLAN.

### Disclaimers

The statements contained in this Disclosure Statement are made as of the date hereof, unless otherwise stated. Neither delivery of the Disclosure Statement nor any exchange of

---

[7]  Estimated net recovery. Current receivables total $2,011,238.76 of which $1,900,000 was billed in the last 60 days. Accounts receivable are pledged as collateral.

[8]  Debtor's accounts payable average $410,000. These expenses would remain unpaid if the case were converted to Chapter 7. Estimated administrative expenses do not include damages or setoff claims against Debtor for early contract termination.

rights made in connection with Plan shall create an implication that there has been no change of facts since the date hereof.

DATED: December 22, 2009.

**STUTSMAN THAMES & MARKEY, P.A.**

*/s/ Bradley R. Markey*
By _____
     Bradley R. Markey

Florida Bar Number 0984213
50 North Laura Street, Suite 1600
Jacksonville, Florida  32202
(904) 358-4000
(904) 358-4001 (Facsimile)
brm@stmlaw.net

Attorneys for Ross & Logan Industries, Inc.

**Exhibit A**

**Feasibility Analysis**

# Ross Logan Industries, Inc.
## April 2010 - March 2011
### Annual Budget

| | 2010 | Apr-10 | May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 |
|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | |
| **Income** | | | | | | | | |
| Job Income | 13,214,950.71 | 1,111,763.95 | 1,091,717.63 | 1,128,970.96 | 1,191,891.09 | 1,138,744.57 | 1,018,824.00 | 1,011,712.22 |
| **Total Income** | 13,214,950.71 | 1,111,763.95 | 1,091,717.63 | 1,128,970.96 | 1,191,891.09 | 1,138,744.57 | 1,018,824.00 | 1,011,712.22 |
| | | | | | | | | |
| **Cost of Goods Sold** | | | | | | | | |
| Job Costs | 8,987,018.86 | 767,117.13 | 753,285.16 | 778,989.96 | 822,404.85 | 785,733.75 | 692,800.32 | 667,730.07 |
| **Total COGS** | 8,987,018.86 | 767,117.13 | 753,285.16 | 778,989.96 | 822,404.85 | 785,733.75 | 692,800.32 | 667,730.07 |
| | | | | | | | | |
| **Gross Profit** | 4,227,931.84 | 344,646.82 | 338,432.47 | 349,981.00 | 369,486.24 | 353,010.82 | 326,023.68 | 343,982.15 |
| | | | | | | | | |
| **Expense** | | | | | | | | |
| Advertising and Promotion | 6,000.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Auto & Truck expenses | 24,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Bank Service Charges | 600.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Bid Costs | 18,000.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| Business Licenses and Permits | 1,200.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| Computer and Internet Expenses | 2,400.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Employee Hiring Fees/Drug Test | 2,400.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Payments to Secured Creditors: | | | | | | | | |
| Mercantile Bank | 180,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Caterpillar Financial | 129,279.12 | 10,773.26 | 10,773.26 | 10,773.26 | 10,773.26 | 10,773.26 | 10,773.26 | 10,773.26 |
| Komatsu Financial | 136,296.00 | 11,358.00 | 11,358.00 | 11,358.00 | 11,358.00 | 11,358.00 | 11,358.00 | 11,358.00 |
| FCC Equipment Financing | 192,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 |
| Payments to Unsecured Creditors | 40,000.00 | 10,000.00 | - | 10,000.00 | 10,000.00 | - | - | 10,000.00 |
| Insurance Expense: | | | | | | | | |
| Workers Comp | 48,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| General Liability Insurance | 36,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Auto & Truck Insurance | 24,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Health Insurance | 144,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 |
| Office Supplies & Expenses | 6,000.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Payroll | 1,104,000.00 | 92,000.00 | 92,000.00 | 92,000.00 | 92,000.00 | 92,000.00 | 92,000.00 | 92,000.00 |
| Postage and Delivery | 3,000.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Printing and Reproduction | 6,000.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Professional Fees | 141,000.00 | 20,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| Repairs and Maintenance | 24,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Rent of Brantley Cattle Equipment | 44,520.00 | 3,710.00 | 3,710.00 | 3,710.00 | 3,710.00 | 3,710.00 | 3,710.00 | 3,710.00 |
| Rent of Office & Land | 24,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Salary & Wages | 796,080.00 | 66,340.00 | 66,340.00 | 66,340.00 | 66,340.00 | 66,340.00 | 66,340.00 | 66,340.00 |
| Shop supplies | 36,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Taxes | 647,040.00 | 53,920.00 | 53,920.00 | 53,920.00 | 53,920.00 | 53,920.00 | 53,920.00 | 53,920.00 |
| Telephone Expense | 36,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Trustee Fees | 19,500.00 | 4,875.00 | - | - | 4,875.00 | - | - | 4,875.00 |
| Uniforms | 12,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Utilities | 9,041.10 | 753.43 | 753.43 | 753.43 | 753.43 | 753.43 | 753.43 | 753.43 |
| **Total Expense** | 3,892,356.22 | 342,529.69 | 318,654.69 | 318,654.69 | 333,529.69 | 318,654.69 | 318,654.69 | 333,529.69 |
| | | | | | | | | |
| **Net Income** | 335,575.62 | 2,117.14 | 19,777.78 | 31,326.31 | 35,956.55 | 34,356.13 | 7,369.00 | 10,452.47 |

# Ross Logan Industries, Inc.
## April 2010 - March 2011
### Annual Budget

| Ordinary Income/Expense | Nov-10 | Dec-10 | Jan-11 | Feb-11 | Mar-11 |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Job Income | 990,651.20 | 968,856.87 | 1,065,742.56 | 1,182,974.24 | 1,313,101.41 |
| **Total Income** | 990,651.20 | 968,856.87 | 1,065,742.56 | 1,182,974.24 | 1,313,101.41 |
| | | | | | |
| **Cost of Goods Sold** | | | | | |
| Job Costs | 653,829.79 | 639,445.54 | 703,390.09 | 816,252.23 | 906,039.97 |
| **Total COGS** | 653,829.79 | 639,445.54 | 703,390.09 | 816,252.23 | 906,039.97 |
| | | | | | |
| **Gross Profit** | 336,821.41 | 329,411.34 | 362,352.47 | 366,722.02 | 407,061.44 |
| | | | | | |
| **Expense** | | | | | |
| Advertising and Promotion | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Auto & Truck expenses | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Bank Service Charges | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Bid Costs | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| Business Licenses and Permits | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| Computer and Internet Expenses | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| Employee Hiring Fees/Drug Test | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Payments to Secured Creditors: | | | | | |
| Mercantile Bank | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Caterpillar Financial | 10,773.26 | 10,773.26 | 10,773.26 | 10,773.26 | 10,773.26 |
| Komatsu Financial | 11,358.00 | 11,358.00 | 11,358.00 | 11,358.00 | 11,358.00 |
| FCC Equipment Financing | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 |
| Payments to Unsecured Creditors | - | - | 10,000.00 | | |
| Insurance Expense: | | | | | |
| Workers Comp | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| General Liability Insurance | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Auto & Truck Insurance | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Health Insurance | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 |
| Office Supplies & Expenses | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Payroll | 92,000.00 | 92,000.00 | 92,000.00 | 92,000.00 | 92,000.00 |
| Postage and Delivery | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Printing and Reproduction | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Professional Fees | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| Repairs and Maintenance | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Rent of Brantley Cattle Equipment | 3,710.00 | 3,710.00 | 3,710.00 | 3,710.00 | 3,710.00 |
| Rent of Office & Land | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Salary & Wages | 66,340.00 | 66,340.00 | 66,340.00 | 66,340.00 | 66,340.00 |
| Shop supplies | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Taxes | 53,920.00 | 53,920.00 | 53,920.00 | 53,920.00 | 53,920.00 |
| Telephone Expense | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Trustee Fees | | | 4,875.00 | | |
| Uniforms | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Utilities | 753.43 | 753.43 | 753.43 | 753.43 | 753.43 |
| **Total Expense** | 318,654.69 | 318,654.69 | 333,529.69 | 318,654.69 | 318,654.69 |
| | | | | | |
| **Net Income** | 18,166.72 | 10,756.65 | 28,822.79 | 48,067.33 | 88,406.75 |

**Exhibit B**

**<u>Liquidation of Collateral Analysis</u>**

75721

# Ross & Logan Industries, Inc.
## Forced Liquidation Analysis

| Lienholder | Description | VIN / Serial No. | FL Value | Debt | Equity |
|---|---|---|---|---|---|
| Martin Leasing | Earthwork 3D software, GTC0303G Roll-Up III Digitizer | | $1,000.00 | $500.00 | $500.00 |
| Komatsu Financial Limited Partnership | Komatsu Wheel Loader WA250-5L | A74080 | 81,000.00 | 83,105.97 | (2,105.97) |
| Komatsu Financial Limited Partnership | Komatsu Hydraulic Excavator PC300LC-7E | A88396 | 112,500.00 | 107,285.50 | 5,214.50 |
| Komatsu Financial Limited Partnership | Komatsu Hydraulic Excavator PC400LC-8 | A88160 | 150,000.00 | 224,289.90 | (74,289.90) |
| Komatsu Financial Limited Partnership | Komatsu Excavator PC300LC-7 | A86745 | 87,500.00 | 33,313.39 | 54,186.61 |
| Komatsu Financial Limited Partnership | Komatsu WA320 Loader & WA400-5L Loader | A32505 / A40086 | 62,500.00 | 18,741.10 | 43,758.90 |
| Komatsu Financial Limited Partnership | Komatsu Wheel Loader WA380-5L | A52771 | 65,000.00 | 55,526.99 | 9,473.01 |
| Komatsu Financial Limited Partnership | Komatsu Crawler Dozer D61PX-15 | B41239 | 100,000.00 | 79,585.97 | 20,414.03 |
| FCC Equipment Financing, Inc. | 2007 Chevrolet Silverado | 1GBJK33D77F160144 | 25,000.00 | 38,525.66 | (13,525.66) |
| FCC Equipment Financing, Inc. | 2007 Chevrolet Colorado | 1GCDT13E77B140922 | 10,000.00 | 20,924.28 | (10,924.28) |
| FCC Equipment Financing, Inc. | Komatsu PC400LC-7 Hydraulic Excavator, Coupler, Grappler | A86634, 0804-1311 | 59,000.00 | 217,290.86 | (158,290.86) |
| FCC Equipment Financing, Inc. | 2006 GMC 5500 | 1GDE501215R523956 | 30,000.00 | 96,280.37 | (66,280.37) |
| FCC Equipment Financing, Inc. | 2007 Trail King Trailer | 1TKJ05330TB108343 | 50,000.00 | 93,530.76 | (43,530.76) |
| FCC Equipment Financing, Inc. | 2007 Kenworth T800 Roll Off | 1NKDLUOX27J191873 | 60,000.00 | 128,731.79 | (68,731.79) |
| FCC Equipment Financing, Inc. | 2006 Peterbilt 379 | 1XP5DB9X6N6N60689 | 17,000.00 | 74,278.88 | (57,278.88) |
| FCC Equipment Financing, Inc. | 2006 Kenworth W900L | 1XKWPBTX16J134789 | 79,000.00 | 90,780.23 | (11,780.23) |
| FCC Equipment Financing, Inc. | 2006 Peterbilt 379 | 1XP5D80X76N640946 | 17,000.00 | 74,278.88 | (57,278.88) |
| FCC Equipment Financing, Inc. | 2007 Kenworth T800 | 1NKDLM0X37J163676 | 60,000.00 | 118,282.89 | (58,282.89) |
| FCC Equipment Financing, Inc. | Caterpillar Grader 12G | 061M13425 | 25,000.00 | 79,229.47 | (54,229.47) |
| FCC Equipment Financing, Inc. | Dust Boss 3 Wheel Boster Pump | DB60728 | 11,000.00 | 32,750.28 | (21,750.28) |
| FCC Equipment Financing, Inc. | CTS Dump Trailer | 1C9344022GS770251 | 18,000.00 | 60,528.07 | (42,528.07) |
| Caterpillar Financial Services Corporation | Caterpillar Skid Loader 248B | SCL01545 | 10,000.00 | 15,885.74 | (5,885.74) |
| Caterpillar Financial Services Corporation | Caterpillar Skid Steer Loader w/ GP Bucket | PAT03185 | 9,000.00 | 13,239.68 | (4,239.68) |
| Caterpillar Financial Services Corporation | Caterpillar Track-Type Tractor D5GLGP | RKG02771 | 45,000.00 | 59,481.94 | (14,481.94) |
| GMAC | 2005 Chevrolet Pickup | 1GBHC24U95E170973 | 13,000.00 | 6,983.44 | 6,016.56 |
| GMAC | 2006 Chevrolet Silverado | 1GCEK14VX6Z212517 | 18,000.00 | 10,445.22 | 7,554.78 |
| GMAC | 2006 Chevrolet Silverado | 3GCEK14V06B172626 | 18,000.00 | 10,391.76 | 7,608.24 |
| GMAC | 2007 Chevrolet Silverado | 2GCEK13M371523273 | 25,000.00 | 9,407.75 | 15,592.25 |
| GMAC | 2007 Chevrolet Silverado | 2GCEK19U471718277 | 25,000.00 | 23,825.23 | 1,174.77 |
| GMAC | 2008 Chevrolet Silverado | 1GCEK19J382275161 | 32,000.00 | 29,073.30 | 2,926.70 |
| GMAC | 2008 Chevrolet Silverado | 1GBJC336X8F185734 | 32,000.00 | 35,080.16 | (3,080.16) |
| GMAC | 2007 Chevrolet CK30943 | IGBJK336X7F514238 | 22,000.00 | 16,605.54 | 5,394.46 |
| GMAC | 2007 Chevrolet Silverado 35 | IGBJC33D37F113206 | 24,000.00 | 28,079.80 | (4,079.80) |
| GMAC | 2006 Chevrolet Silverado 25 | 1GCHK23D86F188764 | 18,000.00 | 14,040.70 | 3,959.30 |
| GMAC | 2007 Chevrolet Silverado | 3GCEK13M72G535289 | 24,000.00 | 32,143.60 | (8,143.60) |

# Ross & Logan Industries, Inc.
## Forced Liquidation Analysis

| Lienholder | Description | VIN / Serial No. | FL Value | Debt | Equity |
|---|---|---|---|---|---|
| GMAC | 2008 Chevrolet Silverado | 1GCJC33658F163653 | 32,000.00 | 31,096.51 | 903.49 |
| American Enterprise Bank of Florida | 2005 Peterbilt Tractor Model 378 | 1XPFDB9X55N865940 | 17,000.00 | 34,115.82 | (17,115.82) |
| Totals | | | $1,484,500.00 | $2,097,657.43 | ($613,157.43) |
| | | | | | |
| Owned Automobiles as listed on Schedule B of the Petition ($242600.00) | | | 121,300.00 | | 121,300.00 |
| Owned Machinery as listed on Schedule B of the Petition ($589,894.00) | | | 294,947.00 | | 294,947.00 |
| Owned Furniture and Equipment as listed on Schedule B of the Petition ($18,211.20) | | | 7,200.00 | | 7,200.00 |
| Totals | | | $423,447.00 | $0.00 | $423,447.00 |